IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ADVANCED TECHNOLOGY INCUBATOR, INC. § § § Plaintiff § § v. § § SHARP CORPORATION, § SHARP ELECTRONICS CORPORATION, § DAI NIPPON PRINTING, and § DNP COLOR TECHNO KAMEYAMA § CO., LTD. § § Defendants § § | Case No. 2:07-CV-468 JURY TRIAL DEMANDED |

## ORDER

Before this Court is Advanced Technology Incubator, Inc.'s ("Plaintiff") Motion to Compel Documents and 30(B)(6) Deposition from Defendant Sharp. (Doc. No. 57)[1]. United States District Judge David Folsom referred this case to the undersigned for all pretrial proceedings. (Doc. No. 33). Pursuant to this referral, this Court enters the following Order.

## I. Procedural History

On September 19, 2008, Plaintiff filed this Motion to Compel Documents and 30(B)(6) Deposition from Defendant Sharp. (Doc. No. 57). With this Motion to Compel, Plaintiff seeks the production of responsive and non-privileged documents, the production of Sharp's 30(B)(6) witnesses in the Eastern District of Texas, and the production of documents relating to "any LCD assemblies, televisions and 'reasonably similar' devices manufactured using ink-jet technology."

---

[1] The docket numbers in this Order are referenced by the designation "Doc. No."

1

*Id.*

On October 6, 2008, Defendant Sharp filed a sealed Response to Plaintiff's Motion to Compel and, alternatively, sought a protective order from this Court. (Doc. No. 61). With this Response, Sharp claims that the documents requested by Plaintiff have either been produced or would be produced shortly and that Sharp had already supplemented its response to Interrogatory No. 2 of Plaintiff's First Set of Interrogatories to Defendants ("First Set of Interrogatories"). *See id.* Sharp also claims that the depositions of its 30(B)(6) witnesses should be taken in Japan, where the witnesses reside and work. *See id.* Finally, Sharp claims Plaintiff is not entitled to discovery of Sharp's other products (such as cell phones and computer screens) with LCD modules because those products are not the same or "reasonably similar" to Sharp's televisions with LCD modules. *See id.*

On October 14, 2008, Plaintiff filed a sealed Reply to Sharp's Response, and on October 15, 2008, Sharp filed a sealed Sur-Reply to Plaintiff's Motion to Compel. (Doc. Nos. 66, 69). On October 17, 2008, this Court held a hearing on Plaintiff's Motion to Compel. (Doc. No. 70). This matter is now ready for decision.

## II. Background

On March 28, 2008, Plaintiff served Sharp with Plaintiff's First Set of Interrogatories.[2] With this First Set of Interrogatories, Plaintiff requested that Sharp answer four interrogatories. Specifically, Interrogatory No. 2 requested that Sharp answer the following:

> Describe in detail all relevant aspects of the process for manufacturing Liquid Crystal Display Products, and in particular the color filters for such products, at the manufacturing facilities referred to in your answer to Interrogatory No. 1. Your

---

[2] Although Plaintiff's First Set of Interrogatories were not attached to Plaintiff's Motion to Compel, Plaintiff claims this set of interrogatories were served on March 28, 2008. (Doc. No. 57, Page 3). Sharp has not disputed this claim. Therefore, this Court presumes this set of interrogatories were served on March 28, 2008.

2

description should include the specific processing conditions, materials, and equipment used for each manufacturing step, including at least the steps of: depositing any opaque material on a glass (or other transparent material) substrate surface; forming any openings in any opaque material that has been deposited on a glass (or other transparent material) substrate surface, forming any openings in any opaque material that has been deposited on a glass (or other transparent material) substrate surface; filling any openings in the opaque material with an ink, dye or other light influencing material; curing any ink, dye or other light influencing material; depositing any Indium Tin Oxide layer (or equivalent) atop the opaque material and ink, dye or other light influencing material; depositing any Indium Tin Oxide layer (or equivalent) on a glass (or other transparent material) substrate surface; patterning any Indium Tin Oxide layer (or equivalent); and introducing liquid crystals into the Liquid Crystal Display Product. If any process steps are performed by third parties, identify the third party.

On April 30, 2008, Sharp served Plaintiff with its Response to these First Set of Interrogatories. (Doc. No. 57, Ex. 1). Sharp did not respond to Interrogatory No. 2, but, instead, objected to this interrogatory on the ground that it was "impermissible under the Judge's Local Rules which limit the number of interrogatories to ten (10), including subparts." *Id.* at 8.

On June 4, 2008, Sharp filed its Second Amended Response to Plaintiff's First Set of Interrogatories. (Doc. No. 57, Ex. 2). With this amended response, Sharp agreed to respond to Interrogatory No. 2 with business records pursuant to FED. R. CIV. P. 33(d). Sharp agreed that production would begin on June 27, 2008. Sharp also agreed that "[a]t the time of production, Defendants [Sharp] will identify the documents relating to this interrogatory by Bates number." *Id.* at 11. Since that time, Sharp has allegedly produced over 280,000 pages of documents. (Doc. No. 69, Page 2). As of the date Plaintiff filed its Motion to Compel, Plaintiff alleged that very large blocks of these documents had been identified as being responsive to Interrogatory No. 2.[3]

---

[3]Plaintiff claimed it was not notified as to *which documents* were responsive to Interrogatory No. 2 until July 11 and July 23. (Doc. No. 57, Page 4). Sharp has not disputed this claim. Therefore, the Court presumes Plaintiff's claim is accurate.

On August 11, 2008, Plaintiff, in an effort to obtain discovery of Sharp's LCD manufacturing process, noticed a 30(B)(6) deposition of Sharp ("Notice"). (Doc. No. 61, Ex. J). On September 3, 2008, Defendant filed its objections to this Notice. (Doc. No. 61, Exhibit K). Specifically, Defendant objected to the proposed location of the depositions. *See id.* Defendant claimed that these Rule 30(B)(6) depositions must take place in Japan at either the U.S. Embassy or at the U.S. Consulate. *See id.* Plaintiff does not dispute the fact that if these depositions are taken in Japan, they must be taken at one of these two locations. However, during the hearing on this matter, Plaintiff stated that, due to treaty obligations with Japan and in accordance with Japan's deposition procedures, those depositions could not take place until mid-November.

Also in this case, Plaintiff disputes whether Sharp has produced all documents responsive to Plaintiff's discovery requests. (Doc. Nos. 57, 66). Specifically, Plaintiff claims Sharp may have only produced *sufficient* documents and not *all* documents responsive to Sharp's discovery requests. Plaintiff also claims Sharp may not have produced all relevant portions of the "recipe book" detailing the manufacturing process of Sharp's LCD modules.[4]

Finally, Plaintiff claims Sharp has improperly limited discovery in this matter to only Sharp's televisions with LCD modules. (Doc. No. 57, Pages 6-8). Although it unclear when this dispute arose, Sharp currently argues that Plaintiff is only entitled to discovery of the LCD modules used in its televisions, not to discovery of the LCD modules used in its other products (such as in its cell phones and computer screens).

---

[4] In its Motion to Compel, Plaintiff claims Sharp has failed to produce "ISO 9000 standards-related documents." (Doc. No. 57, Page 4). However, this issue was not raised at the hearing, and there appears to be no further dispute on this matter that must be resolved by this Court.

4

## III. Discussion

With this Motion to Compel, Plaintiff claims the following: (1) the deposition of Sharp's 30(B)(6) witnesses should be taken in the Eastern District of Texas, not in Japan; (2) Sharp must be compelled to produce *all* of its responsive, non-privileged documents; and (3) Sharp must be compelled to produce all of the documents pertaining to Sharp's LCD modules in *all of its* products (including the LCD modules used in Sharp's cell phones and computer screens). This Court will address each of these arguments in order.

### A. Sharp's 30(B)(6) Witnesses

Plaintiff claims that the depositions of Sharp's Rule 30(B)(6) witnesses should be taken in the Eastern District of Texas, not in Japan. Under the general rule in the Fifth Circuit, the deposition of a FED. R. CIV. P. 30(B)(6) witness should be taken at a corporation's principal place of business. *See Salter v. Upjohn Co.*, 593 F.2d 649, 651-52 (5th Cir. 1979) (holding that "[i]t is well settled that '(t)he deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business,' especially when, as in this case, the corporation is the defendant") (citation omitted). However, the determination of where a Rule 30(B)(6) deposition should be taken is subject to the court's discretion. *See id.* A court is permitted to depart from this general rule where the plaintiff shows peculiar circumstances or compelling reasons for such a departure. *See Tailift USA, Inc. v. Tailift Co., Ltd.*, 2004 WL 722244, at *2-4 (N.D. Tex. March 26, 2004) (citing the five factors from *Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp.*, 147 F.R.D. 125, 127 (N.D. Tex. 1992)).

In the present action, the parties do not dispute the fact that Japan is Sharp's principal place of business. Accordingly, under the general rule, Sharp is correct in its claim that the depositions

5

should be taken in Japan. However, this Court finds that Plaintiff has established compelling reasons for departing from this general rule. First, Plaintiff has been seeking the information needed from these 30(B)(6) witnesses since March 28, 2008 when it served its First Set of Interrogatories. Because Sharp has expended a considerable amount of time producing the documents response to this interrogatory, Plaintiff has been waiting nearly five months for the responsive documents to be produced.

This Court acknowledges that producing approximately three hundred thousand documents is a difficult task. However, this Court finds that Plaintiff has been prejudiced by this delay. Arguably, Plaintiff is not automatically *entitled* to infringement or process discovery at this stage. *See Neomagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) (holding "[i]t is well settled that claims may not be construed by reference to the accused device"). However, Sharp has not argued that this discovery is *prohibited*, and Plaintiff has been seeking this information for nearly five months. Even assuming its delay was not intentional, Sharp cannot delay production and then claim Plaintiff is not entitled to discovery at this stage of the case.[5]

Second, Plaintiff should not be further prejudiced by being forced to wait another month to take these depositions in Japan. As admitted by both parties at the hearing in this matter, if these depositions were to take place in Japan, they could not proceed until a month following entry of this Order, which would be after the time Plaintiff would be required to limit the number of asserted claims and after the time Plaintiff would be required to file its opening claim construction brief. Because of these upcoming deadlines and because Plaintiff has diligently sought the requested

---

[5] This is especially true since Sharp did not object in its response to Interrogatory No. 2 of Plaintiff's First Set of Interrogatories on the basis that this requested information was outside the scope of claim construction discovery. (Doc. No. 61, Ex. C).

information for nearly five months, the Court finds Plaintiff would be prejudiced by any further delay.

Third, Sharp has indicated that only two witnesses would be produced in response to this Notice: "In this regard, Sharp has identified Mr. Kobayashi as the person who is most knowledgeable. In addition, either Mr. Takii or Mr. Kishimoto will be the second witness, depending upon availability." (Doc. No. 61, Page 7). Even though these two witnesses may be inconvenienced by this travel from their place of employment and work, only two witnesses are being required to travel this distance. Sharp has provided no *specific* reason for not being able to produce these individuals in the United States, apart from the fact that they would be inconvenienced, and that Sharp's production capacity *might* be impacted in some way *if* a problem arose during the witness's absence for the depositions.

Fourth, Plaintiff has offered to pay the travel expenses (including lodging and transportation) associated with deposing these two individuals. Courts in other districts who have ordered Rule 30(B)(6) depositions of foreign companies in the United States have ordered the parties to each pay half the costs associated with transporting and lodging those individuals. *See Custom Form Mfg., Inc. v. Omron Corp.*, 196 F.R.D. 333, 336 (N.D. Ind. 2000) (ordering the parties to share equally the "reasonable costs associated with the travel and lodging" of the Japanese witnesses).

Accordingly, based upon these considerations, this Court finds the depositions of these Rule 30(B)(6) witnesses should be taken in the Eastern District of Texas on or before November 12, 2008. The parties are, of course, free to agree to an alternate location for depositions within the United States that might be more convenient for both parties. Wherever the location of these depositions, the parties are directed to share evenly in the reasonable costs associated with the travel and lodging

of Sharp's Japanese witnesses during the ordered depositions.

### B. Production of Responsive, Non-Privileged Documents

Plaintiff is seeking the production of *all* non-privileged, responsive documents. (Doc. No. 57). Plaintiff claims Sharp has only produced "sufficient" documents and has not produced "all" documents responsive to discovery requests. This dispute extends to the production of the so-called "recipe book" and the production of related documents. The parties should be well aware of their obligations to produce *all* documents responsive to discovery requests that are not privileged. *See* FED. R. CIV. P. 26, 30, 33, 34, 37; Local Court Rule CV-26. Should either party not produce all the requested documents in a timely manner, the requesting party should file a motion to compel and a motion for sanctions. This Court will then deal with those issues under FED. R. CIV. P. 37.

### C. Scope of Discovery

Plaintiff claims that discovery should not be limited to those Sharp televisions listed in its Preliminary Infringement Contentions ("PICs") and that it should be able to obtain full discovery of all Sharp products (such as cell phones and computer screens) manufactured using an inkjet manufacturing method. (Doc. No. 57). In response, Sharp claims that the LCD modules in Sharp televisions and in Sharp's other products are not reasonably similar. (Doc. No. 61). Counsel for Sharp has stated that "LCD color filter modules made for use in televisions are not used in other [Sharp] products." (Doc. No. 61, Ex. A). Additionally, a representative of Sharp (Mr. Kobayashi) has signed a declaration stating the following: "In my opinion, televisions with LCD modules are not the same as or reasonably similar to cell phones or computers with LCD modules. Moreover, the LCD modules used in Sharp's televisions are quite different from the LCD modules used in computers and cell phones." (Doc. No. 61, Ex. B).

In two prior cases, United States District Judge David Folsom has entered orders addressing the scope of discovery in patent infringement cases. *See Mosaid Technologies, Inc. v. Micron Tech., Inc.*, 2:06-cv-00302 (Doc. No. 257) (Entered Jan. 29, 2008); *Epicrealm Licensing, LLC v. Autoflex Leasing, Inc.*, 5:07-cv-00125 (Doc. No. 385) (Entered Aug. 27, 2007). In those cases, the Court held that, although there is "no bright line rule that discovery can only be obtained if related to an accused product identified in a party's PICs," there still must be some showing that the products (such as Sharp's computers and cell phones) are "reasonably similar" to those accused in the PICs. *See Epicrealm Licensing, LLC*, 5:07-cv-00125 (Doc. No. 385, Pages 5-6). For instance, in *Mosaid*, the Court found that the plaintiff established reasonable similarity by going "well beyond the claim language" and by providing "alternative documentation," such as reverse engineering reports based upon publically available information. *See Mosaid Technologies, Inc.*, 2:06-cv-00302 (Doc. No. 257, Pages 13-14).

However, at this stage of discovery in the instant case, it is difficult, if not impossible, to determine whether the LCD modules for these Sharp products is "reasonably similar" or not. Therefore, the Court will withhold ruling on this issue until after these Rule 30(B)(6) depositions are taken. After those depositions are taken, and Mr. Kobayashi and other witnesses are fully questioned on the issue of "reasonably similar" products, Plaintiff may re-urge its motion that all documents for Sharp's different products (such as cell phones and computer screens) be produced if it deems such production is appropriate. At this time, Sharp is not required to produce all documents related to its other products (apart from televisions) that may use this inkjet manufacturing process.

## IV. Conclusion

Based upon the foregoing, this Court **GRANTS** Plaintiff's Motion to Compel **IN PART** and **DENIES** Plaintiff's Motion to Compel **IN PART**. Furthermore, this Court **GRANTS** Defendant's Motion for Protective Order **IN PART** and **ORDERS** the following:

1.  Absent an agreement of the parties, the depositions of the individuals from Japan noticed in the Rule 30(B)(6) Notice (dated August 11, 2008) are **ORDERED** to be taken in the Eastern District of Texas before November 12, 2008. It is further ordered that Plaintiff will reimburse Sharp for half of the reasonable costs associated with the travel and lodging of Sharp's Japanese witnesses during the ordered depositions.

2.  The parties are **ORDERED** to produce all responsive, non-privileged documents. Should either party refuse to produce such documents, the requesting party is directed to file a motion to compel and a motion for sanctions pursuant to FED. R. CIV. P. 37.

3.  Sharp is not required to produce any documents related that its other products (apart from televisions) that may use this inkjet manufacturing process until after the Rule 30(B)(6) depositions have been completed. After those depositions are completed, Plaintiff may re-urge its motion to compel the production of these documents.

**SIGNED this 21st DAY OF OCTOBER, 2008.**

HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE