FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JUL - 6 2009

DAVID J. MALAND, CLERK
BY
DEPUTY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ADVANCED TECHNOLOGY INCUBATOR, INC. | § § § | |
| Plaintiff | § § | |
| v. | § § § | Case No. 2:07-CV-468 JURY TRIAL DEMANDED |
| SHARP CORPORATION, SHARP ELECTRONICS CORPORATION, DAI NIPPON PRINTING, and DNP COLOR TECHNO KAMEYAMA CO., LTD. | § § § § § § § | |
| Defendants | § § | |

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss for Lack of Subject Matter Jurisdiction of

Defendants Sharp Corporation and Sharp Electronics Corporation (collectively "Sharp") and DAI

Nippon Printing and DNP Color Techno Kameyama Co., Ltd. (collectively "DNP").[1] Dkt. No. 75.

Plaintiff, Advanced Technology Incubator, Inc. ("ATI"), has responded. Dkt. No. 86.   The Court

held a hearing on the Motion to Dismiss on May 11, 2009. After considering pleadings, arguments

of counsel, and all other relevant exhibits and papers, the Court makes the following

recommendation regarding disposition of this Motion.

## I. BACKGROUND

On October 29, 2007, ATI filed this action against Sharp and DNP alleging the infringement

of United States Patent Nos. Re. 37, 682 ("the '682 Patent") and Re. 36,711 ("the '711 Patent")

---

[1] Sharp and DNP will be collectively referred to as "Defendants" when necessary.

(collectively "the Patents").[2]  *See* Complaint, Dkt. No. 1.  These patents relate to a method of fabricating a liquid crystal display.  Dkt. No. 81, Exs. A-B.  Both the '682 and '711 Patents are reissue patents of Patent No. 5,576,070 ("the '070 Patent"), which was originally issued on November 19, 1996, and both the '682 and '711 Patents share a common specification.  *Id.*  Defendants Sharp and DNP filed their answers on March 3, 2008.  Dkt. Nos. 14, 17.[3]

On November 7, 2008, Sharp and DNP filed their Motion to Dismiss for Lack of Subject Matter Jurisdiction, alleging ATI lacks standing to bring this suit or, alternatively, alleging ATI failed to join a necessary and indispensable party.   The basis of this allegation is the assertion that ATI's rights to the patents-in-suit derive from an agreement between ATI and LG Phillips LCD Co., Ltd. ("LPL").  The agreement between ATI and LPL purported to be an "Assignment and Patent License Agreement" (APLA) and an "Assignment of Rights" (AOR) effecting the transfer of the rights of the '682 and '711 Patents from LPL to ATI. According to Defendants, however, ATI did not acquire any of the substantial ownership rights in the asserted patents.   Defendants argue ATI is a bare licensee, not an owner, and thus not entitled to bring this infringement action. Alternatively, Defendants argue that even if ATI is more than a bare licensee, it lacks "all substantial rights" to the asserted patents and should have joined LPL as a necessary and indespensible party to this suit.  In response, ATI claims it has "all substantial rights" related to the patents and is entitled to sue in its own name without bringing in other parties.  ATI also asserts it is the only entity entitled to bring an infringement action pursuant to the APLA and AOR.

_____

[2] ATI initially filed suit alleging infringement of the '682 Patent only. Dkt. No. 1. On March 10, 2008, ATI amended its Complaint to assert infringement of the '711 Patent. Dkt. No. 20.

[3] A more detailed factual background regarding the patents-in-suit and the claims and allegations of the parties is contained in the Court's Claim Construction Order, filed March 11, 2009. Dkt. No. 117.

## II. THE TRANSFER OF THE PATENTS

Dr. Zvi Yaniv is the inventor of a process for the manufacture of liquid crystal displays (LSDs) at issue in the case. The invention was the subject of the '070 patent. In May 1992, Dr. Yaniv assigned his rights to the '070 patent to ATI. On August 19, 1998, ATI transferred the '070 patent, including any reissue patents, to LPL.[4] As noted above, the '070 patent was reissued as the '682 and '711 Patents.

On December 14, 2006, LPL transferred the Patents at issue back to ATI pursuant to the APLA and the AOR. As part of the transfer, ATI was granted the right to sue for infringement. Section 2 of the APLA states in pertinent part:

> LPL hereby sells and assigns to ATI its entire right title, and interest in the Patents to be held and enjoyed by ATI, its successors and assigns, . . .,including LPL's right, title and interest in and to all causes of action and enforcement rights, . . ., including without limitation, all rights to pursue all past, present, and future damages, injunctive relief, and other remedies for past, present and future infringement of the Patents.

The transfer of the Patents to ATI was deemed "irrevocable" pursuant to the terms of the APLA.

ATI was specifically given the following rights in the Patents: (a) the right to enforce the patents through an infringement suit; (b) the right to transfer ownership of the patents; and (c) the exclusive right to license the patents. However, despite the language indicating it had sold its "entire right title, and interest in the Patents," LPL reserved certain rights and obligations in the patents at issue including: (a) the right to sue ATI for breach of contract if ATI transferred the Patents or its entire business without LPL's consent; (b) a royalty-free license for itself and its subsidiaries or joint

---

[4]ATI actually transferred the patents at issue to LG Electronics, Inc., which later transferred the patents at issue to LPL. Because LPL (now LG Display Co. Ltd.) is the party alleged to be essential for this litigation to proceed and for purposes of this Report and Recommendation, the Court will refer to LPL as the original transferee.

ventures, both present and future, to use the patents; (c) the right to receive up to one-half of the gross revenue from licensing the patents (after deduction of attorney fees); and (d) the obligation to maintain the patents at issue.  Additionally, there were four pre-existing licenses granted by LPL which were unaffected by the transfer of the Patents to ATI.

In December 2008, LG Display Co. Ltd. (hereinafter "LG") (LPL's successor in interest) executed an "Acknowledgment" in which it disclaimed any ownership interest whatsoever in the patents at issue.  LG also expressly waived any right it had to consent to ATI's right to transfer the patents, agreed it had no interest in the Patents that could be prejudiced by its absence in this lawsuit, agreed it had no right to sue for infringement of the Patents, and agreed to be bound by the outcome of this infringement action.  Section 1 of the "Acknowledgment" states in pertinent part:

> LG and ATI acknowledge and hereby agree that :  (a) LG has no ownership interest in . . . (the Patents), and that LG has no right to revoke the prior assignment and sale of the Patents to ATI under the APLA and the Assignment of Rights executed by the parties contemporaneously with the APLA; (b) LG has no right to enforce the Patents against accused infringers because LG irrevocably sold and assigned all right, title and interest in the Patents, including the right to sue for infringements and collect damages to ATI . . .; (c) the validity, enforceability, infringement of . . . the Patents may be adjudicated in a court proceeding in the absence of LG as a party to such proceeding without impairing, impeding, or prejudicing any interest of LG or LG's ability to protect any interest of LG; and (d) ATI is, and has been since the execution of the APLA and the Assignment of Right, the only entity that may grant licenses under the Patents.

Section 2 of the "Acknowledgment" states in part:

> LG  hereby agrees that ATI, as owner of the Patents, may sell, assign, or otherwise convey the Patents to any third party without LG's consent, and any provisions in Paragraphs 3.2 or 3.2 or elsewhere in the APLA that may restrict ATI's right to sell, assign, or otherwise convey the Patents have never been asserted and are hereby waived.

Finally, Section 4 of the "Acknowledgment" states in part:

> LG agrees to be bound by the outcome of the litigation in the case styled *Advanced Technology Incubator, Inc. v. Sharp Corporation, Sharp Electronics Corporation, Dai Nippon Printing, DNP Color Techno Kameyama Co., Ltd.*, Civil Action No. 2:07-cv-468, in the United States District Court for the Eastern District of Texas, Marshall Division. [the instant case]

ATI asserts that this *nunc pro tunc* "Acknowledgment" cured any alleged defect in standing and that it is unquestionably the owner of the patents-in-suit with the right to go forward with this action.

## III. APPLICABLE LAW

"A patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. §281 (2000). Generally, only the patentee has standing to pursue an infringement action. *See Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1483 (Fed. Cir. 1998). "Patentee" is defined by the statute as the party to whom the patent issued **or** any successors in title to the patent. *See* 35 U.S.C. § 100(d)(2000); *see also Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006) (emphasis added).

Procedural issues in patent cases, such as dismissal of a complaint for lack of subject matter jurisdiction, are governed by the law of the regional circuit. *See Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002). The party asserting jurisdiction has the burden of establishing jurisdiction. *See Kokkenen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375, 377 (1994). If a party does not have standing, rendering the federal court without subject matter jurisdiction, the court must dismiss the action. *See Aetna Cas. & Sur. Co., v. Hillman*, 796 F.2d 770, 774 (5th Cir.1986). Fed. R. Civ. P. 12(h)(3).

The type of patent transfer dictates whether a party has standing to bring a patent infringement lawsuit. In general, there are two types of transfers in patent cases: assignments and licenses. Where the patentee transfers title in a patent by an assignment, the assignee becomes the

effective patentee and has standing to sue for infringement. *See Aspex* 434 F.3d at 1340. The issue

of whether a transfer of rights to a patent is an assignment or a license is not controlled by the title

of the transferring document or by way the parties choose to characterize the transfer. *See Waterman*

*v. Mackenzie*, 138 U.S. 252, 256 (1891). In order to determine the actual nature of a transfer of a

patent the courts should consider the parties' intention and legal effect of the transfer on the parties'

rights and obligations. *See Intellectual Prop. Dev. Inc., v. TCI Cablevision, Inc.*. 248 F.3d 1333,

1342 (Fed. Cir. 2001).

Additionally, if all "substantial rights" under the patent are transferred by the owner of the

patent, the transferee will be deemed the effective patentee under the statute and will be deemed to

have standing to bring suit in its own name. *See Ortho Pharm. Corp. v. Genetics Inst. Inc.*, 52 F.3d

1026, 1030 (Fed. Cir. 1995). Such a transfer is an exclusive license with all substantial rights. *See*

*id.* However, absent a transfer of all substantial rights, the transferee cannot bring suit in its own

name alone (exclusive license) or at all (bare license). Specifically, there are two types of licenses

that are transfers of less than all substantial rights: exclusive license without all substantial rights and

a bare license.

An exclusive licensee without all substantial rights does not receive a transfer of all

substantial rights in the patent but still has "a legally protected interest in the patent created by the

Patent Act, so that it can be said to suffer legal injury from an act of infringement." *See Propat Int'l*

*Corp.*, 473 F.3d at 1193. However, unlike the assignee or the licensee with all substantial rights of

the patent, an exclusive licensee without all substantial rights of the patent may ordinarily not sue

in its own name alone, but may be required to join the patent owner in an action brought against the

accused infringer. *See Abbott Labs.*, 47 F.3d at 1131. Such an exclusive licensee may be required

to bring suit as a co-plaintiff with the patentee to avoid potential future duplicative litigation between the patentee and the accused party. *See Intellectual Prop. Dev., Inc.*, 248 F.3d at 1348 (stating that the requirement is prudential rather than constitutional).

A bare license contains no limit on the licensor's power to grant further licenses. The granting of a bare license is in effect a mere waiver of the right to sue for patent infringement. *See DeForest Radio Tel. & Tel. Co. v. United States*, 273 U.S. 236, 242 (1927). A bare licensee, who has no right to exclude others from making, using, or selling products embodying the invention of the licensed patent, does not have standing to bring an infringement action. *See Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed.Cir.1995). Further, a bare licensee, that is, a party with only a covenant from the patentee that it will not be sued for infringing patent rights, cannot cure its lack of standing by joining the patentee as a party. *See Propat Int'l Corp. v. Rpost Inc.*, 473 F.3d 1187, 1193-94 (Fed.Cir.2007); *Intellectual Prop. Dev., Inc.*, 248 F.3d at 1348-49.

To determine whether a transfer or sales agreement confers a bare license or an exclusive license with or without all substantial rights, the court must ascertain the intention of the parties and examine the substance of that which was granted by the agreement. *See Mentor H/S Inc. v. Medical Device Alliance Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001). "The party asserting that it has all substantial rights in the patent must 'produce . . . written instruments documenting the transfer of proprietary right.' " *Id.* (quoting *Speedplay Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000)). The court must examine the transfer agreement to determine whether it "conveys in full the right to exclude others from making, using, and selling the invention . . .." *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1379 (Fed.Cir.2000). In determining whether a grant of all substantial rights was intended, the court must examine not only the rights transferred but also the rights, if any,

retained by the transferor. *See State Contracting & Eng. v. Condotte Am., Inc.*, 346 F.3d 1057, 1063 (Fed.Cir.2003).

As Judge Davis wrote in *Mediatek, Inc. v Sanyo Elec. Co. Ltd.*, 2007 W.L. 5186792 *4 (E.D. Tex. 2007):

> A transfer is an assignment if it grants "the whole of the patent right, or of an undivided part of the right, or of all rights in a specified geographical region." **A purported exclusive license that conveys "all substantial rights to the patent at issue" may be "tantamount to an assignment for purposes of creating standing."**

(citations omitted) (emphasis added). Further, ownership of all "substantial rights" does not require ownership of each and every right existing under the patent. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia,* 944 F.2d 870, 875 (Fed. Cir. 1991). To determine wether "all substantial" rights to a patent have been granted in an agreement the court must "ascertain the intention of the parties and examine the substance of what was granted." *See id.*, at 874.

Furthermore, there are two separate limitations on standing: constitutional and prudential. Defects in constitutional standing cannot be cured and are determined at the commencement of the lawsuit. *See Paradise Creations, Inc. v. UV Sales, Inc.,* 315 F.3d 1304, 1308 (Fed. Cir. 2003). *See also Enzo APA & Sons, Inc. v. Geapag A.G.,* 134 F.3d 1090, 1093-94 (Fed. Cir. 1998). Defects in prudential standing, however, are not fatal to the lawsuit, and such a defect may be cured after the lawsuit is filed. *See Abbott Laboratories v. Diamedix Corp.,* 47 F.3d 1128, 1133-34 (Fed. Cir. 1995). One remedy for such a defect in prudential standing is to join the patent transferor as a co-plaintiff. *See id.*

In the context of patent transfers, a party with a bare license does not have constitutional standing and cannot sue, even with the joinder of the transferor as a co-plaintiff. *See Propat Int'l*

*Corp.*, 473 F.3d at 1194.  A party with an exclusive license without all substantial rights has constitutional standing to sue but due to the prudential limitations, cannot sue in its own name. *See Abbott Laboratories,* 47 F.3d at 1133-34.   Instead, in order to cure such a defect, this type of licensee may need to join the licensor as a co-plaintiff, or the licensee must otherwise cure the defect. *See id.* However, a party with an exclusive license with all substantial rights or an assignee can bring an infringement suit in its own name. *See Vaupel Textilmaschinen KG,* 944 F.2d at 876.

## IV. DISCUSSION

Accordingly, based upon the law outlined above, the inquiry in this case will be, first, whether ATI has constitutional standing to bring this suit.  If the ATI does not have constitutional standing, it is a bare licensee, and this case must be dismissed.  However, if ATI has constitutional standing, the second inquiry will be whether ATI is an exclusive licensee with or without all substantial rights.  If ATI is exclusive licensee with all substantial rights (a virtual assignment), then ATI can bring suit in its own name without the joinder of LPL/LG.[5]  If ATI is an exclusive licensee without all substantial rights, then the third inquiry will be whether LPL/LG must be joined as a co-plaintiff or if the December 2008 Acknowledgment cured any defect in prudential standing.

## A. CONSTITUTIONAL STANDING

1. Bare License Standard: Defendants first assert ATI lacked constitutional standing and was a bare licensee or a non-exclusive licensee at the time this suit was filed.  In support of their argument, Defendants rely primarily upon *Propat Internationl Corp. v. Rpost, Inc.,* 473 F.3d 1187 (Fed. Cir. 2007), and *Raber v. Pittway Corp.,* 1992 WL 219016, at *1 (N.D. Cal. May 4, 1992).

---

[5] For the purposes of this opinion, since an exclusive license without all substantial rights is considered a "virtual assignment" and for all practical purposes is the same as an assignment, this Court will only address the exclusive license with all substantial rights and not consider whether this transfer rises to the level of an assignment.

However, after reviewing these cases, this Court finds Defendants' argument that ATI lacks constitutional standing is without merit.

In *Propat,* the license transferred was little more than an agency agreement granting the plaintiff the right to sue for infringement. *See Propat,* 473 F.3d at 1191. Even more importantly, in *Propat,* the agreement expressly provided that the transferor was the ***owner of the patent.*** *Id.* The facts in *Propat* are clearly distinguishable from the facts in this case. In the present action, LPL irrevocably transferred the patent to ATI, and through the APLA and AOR, LPL transferred many ownership rights, including the exclusive right to license and the right to sue. Therefore, this Court finds the holding in *Propat* is not controlling in this case. Similarly, this Court declines to follow the precedent set by *Raber.* The facts in *Raber* are distinguishable, and the holding of *Raber* has not been followed by other courts in this district.[6] *See Mediatek, Inc. v. Sanyo Elec. Co. Ltd.,* 2007 WL 5186792, at *1 (E.D. Tex. April 16, 2007).

In the present action, the APLA and AOR transferred many ownership rights to ATI. As further discussed in the next section, these rights include the right to sue, the right to transfer, and the exclusive right to license. Because this transfer of rights created far more than the mere agency agreement that was created in *Propat,* this Court finds ATI acquired more than a bare license and has constitutional standing to sue. *See Propat,* 473 F.3d at 1194-95 (holding that a bare licensee is "a party with only a covenant from the patentee that it will not be sued for infringing the patent rights").

2. Existence of Other Licenses: It is also important to note at this stage of the analysis that

---

[6] The Court in *Raber* held the plaintiff had a "mere license," which is presumably a "bare license." *See Raber,* 1992 WL 219016, at *3.

ATI holds an exclusive license, rather than a non-exclusive or bare license, even though it is subject to several pre-existing licenses and is subject to a license granted to LPL and its subsidiaries. Pursuant to Section 8 of the APLA, ATI's license is subject to four pre-existing licenses: "LPL may have granted some form of license to the Patents to the following third parties prior to the execution of this Agreement: Hitachi, NEC, Toshiba and Semiconductor Energy Laboratory Company.  The licenses are standard cross licenses with no rights to sublicense."  Additionally, pursuant to Section 3.1, ATI granted LPL and its subsidiaries "a worldwide, fully paid up, non-exclusive, non-transferable, and irrevocable license under the Patents."

Defendants argue that these other licenses cause ATI's license to be a non-exclusive or a bare license. Defendants rely upon the language from *Raber v. Pittway Corp.,* 1992 WL 219016, at *1 (N.D. Cal. June 15, 1992) and *Mars, Inc. v. Coin Acceptors, Inc.,* 527 F.3d 1359 (Fed. Cir. 2008) in support of their argument.  In *Raber,* the Court found the transferee did not have an exclusive license because the transferee retained "a non-cancellable royalty-free license under THE PATENT along with the right to grant sublicenses thereunder to its subsidiaries."  1992 WL 219016, at * 3. Under *Raber,* the mere retention of a license and the right to sublicense to subsidiaries caused the transferred license to be non-exclusive.[7]  However, as noted above, this holding has not been followed by other courts in this district, and this Court declines to follow *Raber* under the facts in this case.  *See Mediatek, Inc.,* 2007 WL 5186792, at *1. (holding  that "*Raber* does not mandate a finding that a transfer results only in a bare license whenever the grantee agrees in a patent transfer agreement to grant the patent owner a non-exclusive license with subsidiary sub-licensing rights.

---

[7] In this case, LPL did not retain the right to sublicense to its subsidiaries.  However, under the ALPA, LPL's subsidiaries have already been granted a license.  Therefore, there is essentially no distinction between the transferee's license in *Raber* and transferee's license in the present action.

Existing case law suggests that non-exclusive licenses do not effect the transfer of substantial patent rights.").

Furthermore, the facts in *Mars* do not support Defendants' claim. In *Mars,* the Federal Circuit stated the following : "if the patentee *allows* others to practice the patent in the licensee's territory, then the licensee is *not* an exclusive license." *Mars, Inc.,* 527 F.3d at 1368. This language indicates that if other licenses exist, apart from the license transferred, then the license transferred cannot be an exclusive license. However, the facts of *Mars* do not support such a broad interpretation of that language. In *Mars,* the two relevant time periods are prior to 1996 and after 1996. Prior to 1996, the parties do not dispute the fact that Mars owned the patent at issue: "In the 1996 Agreements, Mars and MEI agreed that Mars was the owner of the patents-in-suit." *Id.* at 1368. Therefore, because Mars was the owner, Mars was the only party with standing to sue prior to 1996.

The important time period is after 1996. After 1996, Mars transferred its rights to MEI: "[Mars] Incorporated hereby transfers to MEI-US its entire interest in the Covered Intellectual Property that relates to the business of the Parties." *Id.* at 1370. The Court found this was an assignment. The Court made this finding, even though MEI-UK retained a pre-existing license to practice the patent in suit as a part of the assignment. Under the terms of the 1996 Agreement, MEI-US's assignment was subject to MEI-UK's license: "MEI-UK will continue to have a non-exclusive right to exploit, in the conduct of its business, the Covered Intellectual Property in any country of the world . . . ." *Id.* at 1368. Importantly, the fact that the *Mars* court found MEI-US's license was still exclusive (and, indeed, was an assignment) even though MEI-UK had a pre-existing license indicates that the mere existence of a pre-existing license does not cause an exclusive license to be

non-exclusive or bare. *See id.*

This interpretation of the *Mars* holding is consistent with those from many other cases and courts. *See, e.g., Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (holding that the plaintiff's license was exclusive even though there were pre-existing licenses); *Mediatek, Inc.*, 2007 WL 5186792, at *1 (holding that "[e]xisting case law suggests that non-exclusive licenses do not effect the transfer of substantial patent rights"). Accordingly, Court finds that the existence of LPL's license for itself and its subsidiaries, in addition to four pre-existing licenses, do not cause ATI's license to be non-exclusive or a bare license.

## B. PRUDENTIAL STANDING

Because ATI had constitutional standing and was more than a bare licensee at the time this suit was filed, the Court must next determine whether ATI had an exclusive license with or without all substantial rights. If ATI has an exclusive license with all substantial rights, ATI can bring suit in its own name, and this Motion to Dismiss must be denied. If ATI has an exclusive license without all substantial rights, this Court must then determine whether ATI has prudential standing to sue in its name without also naming LPL/LG as a co-plaintiff.

1. Right to Sue Infringers:  In evaluating the type of license that has been transferred, the Federal Circuit has found that the transfer of the right to sue alleged infringers is "particularly dispositive." *See Vaupel*, 944 F.2d at 875. As noted above, in determining if a transferee of a patent has the right to sue alleged infringers in its own name,  the court must ascertain the intention of the parties and examine the substance of that which was granted by the transfer agreement. *See Mentor H/S Inc.*, 240 F.3d at 1017.    The policy underlying the requirement to join a co-owner when an exclusive licensee brings suit exists to prevent the possibility of two suits on the same patent against

a single infringer. *See id.* This policy, of requiring joinder of a co-owner, is undercut when a

transferee has the "sole" right to sue infringers. *See id.*

 For instance, in *Vaupel,* the transferee was granted an exclusive license and the "rights to sue

for past present and future infringements" of the patent, provided the transferor was notified prior

to any suit being filed. *Id.* at 875. The *Vaupel* Court held that all substantial rights had been

transferred, specifically finding the following:

> The agreements also transferred the right to sue for infringement of the '650 patent,
> subject only to the obligation to inform Marowsky. **This grant is particularly
> dispositive here because the ultimate question confronting us is whether Vaupel
> can bring suit on its own or whether Marowsky must be joined as a party**. The
> policy underlying the requirement to join the owner when an exclusive licensee
> brings suit is to prevent the possibility of two suits on the same patent against a single
> infringer. *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 38, 43
> S.Ct. 254, 257, 67 L.Ed. 516 (1923) (citing *Gayler v. Wilder*, 51 U.S. (10 How.) 477,
> 13 L.Ed. 504 (1850)). **This policy is not undercut here because the right to sue
> rested solely with Vaupel.**

*Vaupel*, 944 F.2d 875-76 (emphasis added).

 In the present action, ATI has the exclusive right to sue alleged infringers of the patents-in-

suit. Pursuant to Section 2 of the APLA, all of the rights of LPL "in and to all causes of action and

enforcement rights," . . . to sue for "past, present and future damages, injunctive relief, and other

remedies, for past, present and future infringement of the Patents" were transferred to ATI. In fact,

the clear language of Section 2 of the APLA provides that ATI is the only entity with the right to sue

for past, present or future infringement. In effect, no other party, including LPL has the right to bring

an infringement action. Much like it was in *Vaupel,* the fact ATI has the sole right to bring this suit,

is particularly important, and is indeed "dispositive" in determining whether LPL transferred "all

substantial rights" for purposes of the prudential standing analysis. *See Vaupel*, 944 F.2d at 875;

*Mentor H/S Inc.*, 240 F.3d at 1017.

2. <u>Right to Transfer Patents and Exclusive Right to License:</u>  In addition to the right to sue alleged infringers, ATI has the right to transfer the patents at issue to third parties.  However, there are two contractual restrictions on the sale of the Patents.  Pursuant to Section 3.3 of the APLA, one party must obtain consent from the other party prior to the sale of the Patents:

> Each Party to this Agreement has the right to consent with regard to the proposes sale of any or all of the Patents to a third party.  No sale of any or all of the Patents may be made without the other Party's prior written consent, which the other Party may withhold or condition in its sole discretion.

Section 3.2 also provides restrictions on the sale of the Patents through the sale of ATI itself:

> Any sale of ATI that includes the Patents assigned to it under this Agreement will be treated for the purposes of this Agreement, including Paragraph 3.2, as a sale of the Patents.  Under no circumstances may ATI sell, assign, or otherwise convey itself, the Patents, or this Agreement in conjunction with the sale, assignment, or conveyance of any other asset or liability (lest there be confusion about the value of the Patents that are the subject of this Agreement and any other patents ATI may currently or in the future hold in its portfolio).

Defendants assert that these restrictions on the sale of the Patents are restrictions on ATI's right to transfer the Patents.  However, these "restrictions" only give rise to a breach of contract action.  Furthermore, even if these were considered "restrictions" on ATI's right to transfer the Patents, the right of transfer of a patent need not be absolute in order for a party to have prudential standing.  In *Vaupel*, the grantor retained veto power over the grantee's right to issue sublicenses, and this retention did not prevent the grantee from having standing to bring suit for infringement. *See Vaupel* 944 F.2d at 875.  Further, even when a plaintiff's right to transfer a patent is subject to the consent of a previous owner, the plaintiff is not deprived of standing.  In *Unique Coupons, Inc. v. Northfield Corp.* the grantor retained the approval rights over any subsequent sublicense or

assignment. *See Unique Coupons, Inc. v. Northfield Corp.*, 12 Fed. Appx. 928 (Fed. Cir. 2001).

The Federal Circuit held:

> We do not consider that factor as overriding the "particularly dispositive" *Vaupel* factor that Unique was granted the right to sue on its own, a right that was not fully conveyed in the license agreement in *Abbott*. We conclude in this case that Witt granted Unique all substantial rights in the patent and that Witt's joinder in the infringement action was unnecessary. "The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer."

12 Fed. Appx. at 934 (emphasis added) (internal citations omitted).

ATI had the right to transfer the Patents under APLA and AOR. ATI also has the right, under the APLA, to grant both exclusive and nonexclusive licenses. In fact, LPL assigned all its licensing rights in the Patents to ATI. LPL did not retain the right grant sublicenses.[8] The reservation by LPL of the right to consent to any sale of the Patents did not deprive ATI of the right to transfer the Patents. This is especially true under this agreement because, according to the terms of Section 6.2 of the APLA, the transfer of rights to ATI was *irrevocable*, and the Patents do not "revert back" to LPL if ATI violates the terms of the agreement.[9] Thus, the right to transfer the patents at issue weighs in favor of finding ATI has prudential standing to bring this suit. Considering these factors, this Court finds that ATI obtained an exclusive license with all substantial rights pursuant to the AOR and APLA.

3. Post-Filing Cure:  ATI also asserts that even if the restriction on sale of the patents

---

[8] The pre-existing licensees also did not retain the right to sublicense. The APLA acknowledged that LPL had granted four prior sublicenses. *See* APLA §8. However, these pre-existing licenses did not include the right to cross-license: "The licenses are standard cross licenses with no rights to sublicense." APLA §8.

[9] The reservation of a right to consent to any sale of the Patents may give rise to a breach of contract action by LPL against ATI in the event of a non-consensual transfer. It does not restrain the transfer in the first instance, however.

operated to prevent it from having prudential standing, any such defect was cured by the December 2008 Acknowledgment.  In that Acknowledgment, LG disclaimed any ownership interest in the patents at issue, waived any right it had to restrict ATI's right to transfer the patents, agreed it had no interest in the Patents that could be prejudiced by its absence in this lawsuit, agreed it had no right to sue for infringement of the patents, and agreed to be bound by the outcome of this specific infringement action.  The Defendants assert that prudential standing defects can not be cured after suit is filed and that ATI lacked prudential standing at the inception of this case.

The cases cited by Defendant in support of their position that prudential standing defects cannot be cured by post suit agreement are not directly applicable here.  In both *Enzo APA & Son Inc., v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998) and *Gaia Techs, Inc., v Reconversion Techs, Inc.*, 93 F.3d 774 (Fed Cir. 1996), the defects of standing were constitutional rather than prudential in nature. As Judge Davis in *Positive Technologies, Inc. v. LG Display Co., Ltd.*, 2008 WL 4425372, at *3 (E.D. Tex. Sept. 24, 2008) pointed out:

> In *Enzo*, the plaintiff had no rights to the patent when it originally brought suit. *Enzo*, 134 F.3d at 1090-91.  The court recognized that "[a]s a general matter, parties should possess rights before seeking to have them vindicated in court." Id. at 1093. The *Enzo* Court does not distinguish between constitutional and prudential standing. Similarly, in *Gaia*, the court refused to allow a retroactive assignment to the plaintiff after the suit was filed.  As in *Enzo*, after reviewing the patent's chain of title, the *Gaia* Court found that the plaintiff had no rights in the patent at the time of filing. In sum, the parties in *Enzo* and *Gaia* had neither constitutional nor prudential standing to bring their respective suits because they had no rights in the patents at the time of filing.

(emphasis added).  Judge Davis went on to hold that,  "The Federal Circuit has not found that prudential standing cannot be remedied when, as here, a plaintiff has constitutional standing at the commencement of a suit. In fact, the Federal Circuit has recognized on many occasions the ability

-17-

to cure prudential standing defects post filing." *Id.* at *3.  Here, ATI clearly had constitutional standing when suit was filed.  Even if ATI did not obtain an exclusive license with all substantial rights, the December 2008 Acknowledge cured the prudential defect.

## V.  CONCLUSION

ATI has constitutional standing to bring suit against the Defendants.  Further, ATI has prudential standing because it clearly has the sole right to (a) sue alleged infringers, (b) transfer the Patents, and (c) the exclusive right to license the Patents to others.   Even if LPL retained certain rights under the terms of the APLA, ATI was able to cure any prudential standing defect post-filing by way of the December 2008 Acknowledgment executed by LPL.

Based on the foregoing analysis, it is hereby **RECOMMENDED** that Defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction, Dkt. No. 75, be **DENIED**.

**Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A.  636(b)(1)(C).  Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from de novo review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice.  *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).**

**SIGNED**, the 6th day of July, 2009.

HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE

-18-